UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY BROWN, | ) | CIVIL ACTION NO. 4:20-CV-00836 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | (ARBUCKLE, M.J.) |
| Defendant | ) | |

MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Shirley Brown, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  She is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party."); s*ee also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED, and this case will be REMANDED to the Commissioner for a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND & PROCEDURAL HISTORY

On December 30, 2016, and April 11, 2017, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 10; Doc. 15-2, p. 11).  In these applications, Plaintiff alleged she became disabled as of November 11, 2016, when she was 41 years old, due to the following conditions: "can't learn; never finished high school; PTSD; Bipolar; Anxiety; Depression; Paranoia; Anger issues; hylocinations [sic]." (Admin. Tr. 176; Doc. 15-6, p. 7). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, walk, sit, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 203; Doc. 15-6, p. 37). Plaintiff has a limited education, having only completed schooling through the eighth grade. (Admin. Tr. 177; Doc. 15-6, p. 8). Before the onset of her

impairments, Plaintiff worked as a warehouse assistant. (Admin. Tr. 177; Doc. 15-6, p. 8).

On March 27, 2017, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 10; Doc. 15-2, p. 11). On May 4, 2017, Plaintiff requested an administrative hearing. (Admin. Tr. 111; Doc. 15-4, p. 7).

On September 18, 2018, Plaintiff, assisted by her counsel, appeared, and testified during a hearing before Administrative Law Judge Daniel Bultis (the "ALJ"). (Admin. Tr. 40; Doc. 15-2, p. 41). On December 5, 2018, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 21; Doc. 15-2, p. 22). On January 18, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 137-40; Doc. 15-4, pp. 33-36).

On March 23, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 15-2, p. 2).

On May 21, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1). As relief, Plaintiff requests that the Court reverse and set aside the Commissioner's final decision or, in the alternative, remand this case for further proceedings consistent with the Commissioner's

regulations and Circuit law; and order such other relief as this Court deems just. (Doc. 1).

On October 14, 2020, the Commissioner filed an Answer. (Doc. 14). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 14). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 19), and Plaintiff's Reply (Doc. 20) have been filed.  This matter is now ripe for decision.

III.    STANDARDS OF REVIEW

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552,

565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application

of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[2] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement

---

[2] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on December 5, 2018.

age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his

decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

Plaintiff raised the following issues in her Brief:

(1) The ALJ erroneously failed to include the uncontroverted limitation to one or two step tasks within the residual functional capacity assessment; the ALJ erroneously failed to discuss or explain his basis for failing to include the uncontroverted limitation to one and two step tasks.

(2) The ALJ's residual functional capacity is not supported by substantial evidence as it ostensibly rejects all medical opinions of record pertaining to Plaintiff's physical limitations in violation of *Doak v. Heckler*; the ALJ erroneously substituted his opinion for that of a medical one.

(Doc. 16, p. 12).

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his December 2018 decision, the ALJ found that Plaintiff would meet the insured status requirement of Title II of the Social Security Act through March 31, 2022. (Admin. Tr. 13; Doc. 15-2, p. 14). Then, the ALJ concluded that Plaintiff was not disabled at step four, because she could engage in her past relevant work. The ALJ also found, in the alternative at step five, that even if Plaintiff could not perform her past relevant work, she could perform other work that exists in the national economy.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between November 11, 2016, (Plaintiff's alleged onset date) and December 5, 2018 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 21; Doc. 15-2, p. 22).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: bipolar II disorder, borderline personality traits, posttraumatic stress disorder, major depressive disorder with psychotic features, panic disorder, cervical spondylosis, and lumbar degenerative disc disease. (Admin. Tr. 13; Doc. 15-2, p. 14).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 13; Doc. 15-2, p. 14).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) and 20 C.F.R. § 416.967(c) except:

> [T]he claimant is to [sic] frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. The claimant is to frequently be exposed to dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. Claimant is limited to perform simple, routine tasks. Claimant is to frequently respond

appropriately to supervisors in the general public. The claimant's time off tasks can be accommodated by normal breaks.

(Admin. Tr. 15-16; Doc. 15-2, pp. 16-17).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in her past relevant work. (Admin. Tr. 19; Doc. 15-2, p. 20).

At step five, the ALJ found, in the alternative,  that considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 20-21; Doc. 15-2, pp. 21-22). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Hand Packager (DOT 920.687-094); Laundry/Dry Clean Worker (DOT 361.684-010); and Machine Feeder (DOT 652.686-026). (Admin. Tr. 20-21; Doc. 15-2, pp. 21-22).

B.   THE ALJ'S EVALUATION OF THE MEDICAL OPINION EVIDENCE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

In her brief, Plaintiff argues that the ALJ's decision to reject certain limitations assessed by two medical sources—Dr. Young and Dr. Stone—is not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ improperly rejected a limitation to one- or two-step tasks, assessed by Dr. Young. Plaintiff also argues that the ALJ improperly rejected limitations in lifting, carrying, and a prohibition against walking without a cane assessed by Dr. Stone.

The parties agree that the ALJ did, in fact, reject these limitations. The Commissioner argues that the rejection of one- or two- step tasks limitation is harmless error. As to the physical limitations that were rejected, the Commissioner argues that the ALJ's rejection of these limitations is supported by the record. I respectfully disagree.

The Commissioner's regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1).[3] Regardless of its source, the ALJ is required to consider every medical opinion received together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c).

_____

[3] Plaintiff filed her Title II application in this case in December 2016. Plaintiff filed her Title XVI application in April 2017. Between the filing of her Title II application and Title XVI application, the Social Security Administration regulation related to the evaluation of medical opinion evidence was amended. The new regulation, codified at 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c applies to applications filed after March 27, 2017. 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c. Based on the application dates, it appears that the old regulation 20 C.F.R. § 404.1527 would apply to Plaintiff's Title II application, and the new regulation 20 C.F.R. § 416.920c would apply to Plaintiff's Title XVI application. In his decision the ALJ applied the old regulation to both applications. No party objects to the application of old regulation to Plaintiff's Title XVI application.

In deciding what weight to accord competing medical opinions, the ALJ is guided by factors outlined in 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). Where no medical opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinion: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention.  20 C.F.R. §404.1527(c); 20 C.F.R. § 416.927(c).

Furthermore, the ALJ's articulation of the weight accorded to each medical opinion must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  *Cotter*, 642 F.2d at 704. "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

1.    The ALJ Mischaracterized a Limitation Assessed by Dr. Young, then Failed to Include It in the RFC

On March 24, 2017, Psychologist Lori A. Young, Psy.D., completed a PRT assessment and mental RFC assessment as part of the initial review of Plaintiff's applications for benefits.

In the PRT assessment, Dr. Young opined that Plaintiff had the following mental impairments: "depressive, Bipolar and Related Disorders"; "Trauma—and Stressor-Related Disorders"; and "Personality Disorders." (Admin. Tr. 97; Doc. 15-3, p. 5). Dr. Young also assessed that these impairments resulted in: moderate difficulties understanding, remembering, or applying information; moderate difficulties interacting with others; moderate difficulties concentrating, persisting or maintaining pace; and moderate difficulties adapting or managing oneself. (Admin. Tr. 98; Doc. 25-3, p. 6).

In her mental RFC assessment, Dr. Young assessed that Plaintiff was "moderately" limited in the following activities: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or in proximity to others without being distracted by them; completing a normal workday and workweek without interruptions of

psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others. (Admin. Tr. 99-101; Doc. 15-3, pp. 7-9).

Dr. Young provided the following additional explanation in support of her mental RFC assessment:

> Based on the evidence of record, the claimant's statement are found to be partially consistent.
>
> The claimant has no history of [inpatient] treatment and was only recently referred for specialized mental health care by her PCP. While she reports paranoia and [auditory and visual] hallucinations, there is no [medical evidence of record] to support self-report in this respect and mental status is within normal limits.
>
> The claimant's basic memory processes are intact. *The claimant can understand, retain, and follow simple instructions (i.e., perform one- and two-step tasks).* The claimant can make simple decisions and would not require special supervision in order to sustain a routine. The claimant can perform simple, routine, repetitive tasks in a stable environment. The claimant is capable of performing within a work schedule and at a consistent pace.
>
> The claimant is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. The claimant is capable of asking simple questions and accepting instruction. The claimant is able to interact appropriately with the general public. The claimant is able to get along with others in the workplace without distracting them. The claimant can exercise appropriate judgment in the workplace.

> All GAF scores within the medical evidence record provided by acceptable medical evaluating and/or treating sources were considered and given appropriate weight.

> The claimant is able to meet basic mental demands on a sustained basis despite the limitations resulting from impairments.

(Admin. Tr. 101; Doc. 15-3, p. 9) (boldface text omitted) (emphasis added). The use of the term "i.e." (short for "that is"), suggests that Dr. Young believes simple instructions to be the same as "one and two-step tasks."

In his decision, the ALJ gave "great" weight to Dr. Young's opinion. In doing so, he explained:

> On March 24, 2017, Dr. Young opined claimant's alleged mental limitations caused her moderate limitation in understanding, remembering, and applying information, moderate limitation in interacting with others, moderate limitation in concentrating, persisting, and maintaining pace, and moderate limitation in adapting and managing herself. *She further opined claimant could perform simple, routine, repetitive tasks in a stable environment Id.* The undersigned assigns Dr. Young's findings great weight as they are consistent with the medical evidence of record showing claimant's multiple mental health diagnoses and clear stable mental status examinations when properly using her medications as discussed above.

(Admin. Tr. 18; Doc. 15-2, p. 19) (emphasis added). Although the ALJ discusses the performance of "simple, routine, repetitive tasks," he does not reference or define these tasks as "one- and two- step tasks." In the hypothetical questions posed to the vocational expert, the ALJ also expresses a limitation to "simple,

routine tasks," but does not describe these tasks as "one- and two- step tasks." (Admin. Tr. 85-86; Doc. 15-2, pp. 86-87).

I agree with Plaintiff that the ALJ's characterization of the medical opinion in his decision is an error. I agree with the Commissioner that this error, if it were the only error in the ALJ's decision, may be viewed as harmless because Plaintiff would still be able to engage in her past relevant work, and two of the occupations identified as "other work" by the ALJ at step five.[4] However, this is not the only error in the ALJ's decision, and when viewed together this error, along with the

---

[4]    At step four, the ALJ found that Plaintiff could engage in her past relevant work as a production assembly worker. (Admin. Tr. 19). During the administrative hearing, the VE testified that Plaintiff's past work included work in a production assembly position. (Admin. Tr. 85). The VE testified that the DOT number for this past position was 709.687-010. *Id.* This position, as defined in the DOT, has a reasoning development level of 1. DOT 709.687-010, 1991 WL 679134 (describing a "cleaner and polisher" occupation as having a reasoning level of 1).

Two of the three occupations identified by the VE in connection with the ALJ's alternative finding at step five have a reasoning development level of 1. DOT 920.687-094, 1991 WL 687984 (listing the occupation of "Hand Packager" / "Greens Tier" as having a GED reasoning level of 1); DOT 652.686-026, 1991 WL 685773 (listing the occupation of "Machine Feeder" / "Print-Line Feeder" as having a GED reasoning level of 1).

The plain language of the DOT definition for GED Reasoning Level 1 suggests there is no conflict between it and a limitation to no more than one- or two-step tasks. Furthermore, other courts have concluded that "a limitation to one- to two-step tasks is consistent with GED Reasoning Development Level 1." *Wisziwaty v. Astrue*, 861 F. Supp. 2d 924, 946 (N.D. Ind. 2012) (collecting cases). Thus, a person limited to one- or two-step tasks could engage in work that requires a GED Reasoning Level of 1.

two other errors discussed herein, undermine the support for the ALJ's decision such that remand is required.

        2.      The ALJ's Rejection of the Lifting and Carrying Limitations Assessed by Dr. Stone Is Not Supported by Substantial Evidence

As of September 18, 2018 (the date of the ALJ hearing), there was no medical opinion about Plaintiff's physical limitations. (Admin. Tr. 91; Doc. 15-2, p. 92). At the conclusion of the hearing, the ALJ ordered that Plaintiff attend a physical consultative examination. (Admin. Tr. 89-90; Doc. 15-2, pp. 90-91).

On September 26, 2018, Dr. Stone examined Plaintiff and completed a narrative report and check-box medical source statement. In her medical source statement, Dr. Stone assessed that Plaintiff could: occasionally lift or carry up to twenty pounds; sit for up to two hours at a time, and for a total of six hours per eight-hour workday; stand for up to thirty minutes at a time, for a total of four hours per eight-hour workday; walk for up to twenty minutes at a time, and for a total of three hours per eight-hour workday; walk ten feet without the use of a cane; frequently reach and climb stairs and ramps; continuously handle, finger, feel, push/pull, operate foot controls, stoop, kneel, and crouch; and never crawl, balance, and climb ladders or scaffolds. (Admin. 796-99, Doc. 15-10, 143-46). Dr. Stone also assessed that Plaintiff would require a cane to ambulate, that the cane

was medically necessary, and that Plaintiff could walk only ten feet without use of a cane. (Admin. Tr. 797; Doc. 15-10, pp. 144).

In his decision, the ALJ gave "partial" weight to Dr. Stone's medical source statement. In doing so the ALJ explained:

> The undersigned assigns these opinions partial weight. Little weight is afforded to the lifting and carrying opinions as the claimant's physical evidence of record shows no restrictions and reflects her 5 out of 5 strength, normal range of motion, and normal gait as discussed above. Little weight is also given to claimant's can[e] being necessary. The medical record reflects one time where the claimant was examined using a cane and the claimant testified she had only been prescribed the cane for less than a week prior to her hearing (Exhibit 4F/8 and Hearing testimony). Claimant's normal gait, as outlined above, does not suggest the medical need for a cane. Even Dr. Stone's own examination noted claimant's gait was not changed by her use of a cane (Exhibit 10F/4). The undersigned gives great weight to the frequent postural limitations as this is consistent with the medical evidence of record showing claimant to have degenerative disc disease with tenderness, but overall good muscle strength and normal gait, as discussed above.

(Admin. Tr. 18; Doc. 15-2, p. 19). The ALJ's decision also includes the following summary of the objective medical evidence:

> After a motor vehicle accident in December 2016, claimant was noted to be able to work (Exhibits 4F/29 and 8F). She was found to have normal grip strength in her upper and lower extremities and a normal gait, despite her injuries from the accident (Exhibit 4F/15, 18, 20, 23, 25, 31). Claimant was then seen by her primary care physician, in 2017, for an exacerbation of her back (Exhibit 2F/3). An x-ray of claimant's lumbar spine revealed minimal degenerative changes at L3-4 and otherwise unremarkable radiographs (Exhibit 2F/22-23). Straight leg raise testing was negative (Exhibit 6F/2). Upon examination, claimant had a normal range of motion, normal bilateral

strength, and a normal gait (Exhibit 2F/3, 7, 10, 15). Claimant's pain management physician diagnosed her with cervical spondylosis and proceeded with treatment through cervical facet blocks, which claimant reported did not provide her long term pain relief (Exhibit 6F/4, 12, 18, 24).

Claimant also underwent physical therapy (Exhibit 9F). On July 30, 2018, claimant was noted to have an antalgic gait assisted with a cane (Exhibit 4F/8). However, claimant was noted to have a normal gait at her next appointment 9 days later (Exhibit 4F/5). X-rays of claimant's lumbar spine, in July 2018, revealed minimal lumbar spine degenerative disc disease with maintained vertebral body heights and no fracture or listhesis (Exhibit 4F/36). Claimant was also found to have no acute osseous abnormality in her lumbar spine (Exhibit 4F/37). Claimant was noted to have a normal gait by her mental health providers (Exhibit 5F/153, 178).

(Admin. Tr. 17; Doc. 15-2, p. 18).

In support of his decision to discount Dr. Stone's lifting and carrying limitations, the ALJ relies on treatment records that describing Plaintiff as having "5 out of 5 strength." (Admin. Tr. 18; Doc. 15-2, p. 19). In the summary of the relevant records, the ALJ similarly states that Plaintiff "was found to have normal grip strength, 5 out of 5 strength in her upper and lower extremities and a normal gait, despite her injuries from the accident (Exhibit 4F/15, 18, 20, 23, 25, 31)." (Admin. Tr. 17; Doc. 15-2, p. 18).

Contrary to the ALJ's characterization, however, these records suggest that Plaintiff has some weakness in her upper extremities. (Admin. Tr. 326; Doc. 15-7, p. 77) (documenting "mild right [upper extremity] give away weakness . . .

[normal] tone and strength elsewhere,"); (Admin. Tr. 329; Doc. 15-7, p. 80) (documenting "strength equal bilaterally,"); (Admin. Tr. 334, 336; Doc. 15-7, pp. 85, 87) (documenting "3/5 strength R[ight upper extremity], 5/5 strength L[eft upper extremity], 5/5 strength b[ilateral lower extremity]); and (Admin. Tr. 341-42; Doc. 15-7, pp. 92-93) (documenting "R[ight] arm in sling. Tenderness to palpation entire length of R[ight] arm,").

In her argument, the Commissioner does not address whether the record supports the ALJ's rejection of these limitations, and simply states "the ALJ did as he was required to do under the regulations—affording great weight to those portions of the opinion that were supported by and consistent with the record evidence, while discounting those portions that were not." (Doc. 19, p. 25). I am not persuaded that the ALJ's rejection of Dr. Stone's lifting and carrying limitations is supported by the record. Nothing in the records cited by the ALJ in his decision conflict with Dr. Stone's assessment, and in fact suggest a greater degree of limitation than assessed by the ALJ. Accordingly, I find that the ALJ's rejection of this aspect of Dr. Stone's opinion is not supported by substantial evidence.

C.    WHETHER THE ALJ ADEQUATELY ADDRESSED THE TESTIMONY &
      MEDICAL OPINION RELATED TO CANE USE

On September 18, 2018, at the ALJ hearing, the following exchange

occurred between Plaintiff and the ALJ:

| | |
|---|---|
| [ALJ:] | I see you came into the hearing today with a cane in your right hand. |
| [Plaintiff:] | Correct. |
| [ALJ:] | Did a physician prescribe the cane for you? |
| [Plaintiff:] | Yes. |
| [ALJ:] | And who prescribed the cane? |
| [Plaintiff:] | My physician, family doctor. |
| [ALJ:] | Who's—what doctor? What's the doctor's name— |
| [Plaintiff:] | Oh, Dr.— |
| [ALJ:] | --who prescribed the cane. |
| [Plaintiff:] | --Olenginski. |
| [ALJ:] | Olenginski? And when did Dr. Olenginski prescribe you the cane? |
| [Plaintiff:] | Monday. I can't remember— |
| [ALJ:] | I'm sorry. This past Monday? |
| [Plaintiff:] | Yes. |
| [ALJ:] | Okay. That would be two days ago. |
| [Plaintiff:] | Today—yeah. |

Page 22 of 26

[ALJ:]         Two days ago he prescribed the cane. Okay. And is that
               when you started using it, two days ago?

[Plaintiff:]   Yes, a little.

[ALJ:]         How so?

[Plaintiff:]   Because I have a lot of pain on my right side of my leg,
               so it takes a little pressure off when I do step on my right
               leg to walk.

(Admin. Tr. 46-47; Doc. 15-2, pp. 47-48).

Approximately one week later, Dr. Stone examined Plaintiff. Following that
examination, Dr. Stone assessed that (as of September 26, 2018) Plaintiff: required
use of a cane to ambulate; and use of a cane was medically necessary. (Admin. Tr.
797; Doc. 15-10, p. 144). Dr. Stone assessed that the limitations in her opinion,
including those related to cane use, "lasted or will last for 12 consecutive months."
(Admin. Tr. 801; Doc. 15-10, p. 148).

On December 5, 2018, the ALJ issued a decision where he found that
Plaintiff did not need a cane at any point between November 11, 2016 and
December 5, 2018. In his decision, that ALJ concluded that Plaintiff did not need a
cane because:

> The medical record reflects one time where the claimant was
> examined using a cane and the claimant testified she had only been
> prescribed the cane for less than a week prior to her hearing (Exhibit
> 4F/8 and Hearing testimony). Claimant's normal gait, as outlined
> above, does not suggest the medical need for a cane. Even Dr. Stone's

own examination noted claimant's gait was not changed by her use of
a cane (Exhibit 10F/4).

(Admin. Tr. 18; Doc. 15-2, p. 19). The ALJ cites the following exhibits in support

of this assessment: Exhibit 4F/15, 18, 20, 23, 25, 31; Exhibit 9F; Exhibit 4F/8; and

Exhibit 4F/5. (Admin. Tr. 17; Doc. 15-2, p. 18). The ALJ accurately summarizes

that the only documentation of Plaintiff walking with an antalgic gait *before* the

cane was deemed medically necessary was a single examination on July 30, 2018.

(Admin. Tr. 319; Doc. 15-7, p. 70). Then, nine days later, Plaintiff was observed to

have a normal gait. (Admin. Tr. 316; Doc. 15-7, p. 67).

The record does not include treatment notes from the examination where the

cane was prescribed (on or around September 16, 2018).

On September 26, 2018, (after the cane was prescribed) Plaintiff walked

with an antalgic gait. (Admin. Tr. 793; Doc. 15-10, p. 140). Plaintiff had a positive

straight leg raise on the right leg. (Admin. Tr. 794; Doc. 15-10, p. 141). Plaintiff

was using her cane in her right hand, and this did not improve the antalgic gait

caused by right leg pain. (Admin. Tr. 793; Doc. 15-10, p. 140). Nonetheless, after

examining Plaintiff on that day, Dr. Stone assessed that Plaintiff required use of a

medically necessary assistive device for ambulation. This opinion, that Plaintiff

would need an assistive device as of September 26, 2018 (or shortly before) is

uncontradicted in the record.

The Commissioner argues:

> With respect to the cane use, the ALJ explained that Plaintiff's gait was often assessed as normal and she testified at the administrative hearing that she had only been prescribed the cane three days prior to the hearing, none of which suggests the need for a cane (Tr. 18, 47, 426, 264, 268). Even Dr. Stone noted that Plaintiff's gait was unchanged with the use of her cane (Tr. 793).

(Doc. 19, p. 24).

Social Security Ruling 96-9p provides that:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185 at *7. No party appears to argue that Dr. Stone's opinion does not meet the requirements set forth in this ruling. It is not clear whether the ALJ considered this ruling before rejecting this aspect of Dr. Stone's opinion.

Although the ALJ's assessment that Plaintiff did not require a cane before September 2018 is clearly supported by the record. The explanation provided by the ALJ and evidence cited is not enough to contradict Dr. Stone's opinion that a cane was medically necessary for ambulation on or around September 26, 2018. The only evidence cited as "contradicting" this limitation is that the cane did not appear to improve Plaintiff's gait. It is not clear that this statement is inconsistent

with Dr. Stone's assessment, and the ALJ did not explain why he considered it to be inconsistent where Dr. Stone described the cane as medically necessary. Accordingly, the ALJ's rejection of the limitation regarding cane use beginning in September 2018 is not well-explained enough to permit meaningful review.

V.    CONCLUSION

Accordingly, I find that that:

(1)    The final decision of the Commissioner will be VACATED.

(2)    This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of Shirley Brown.

(4)    An appropriate order shall issue.

Date: October 8, 2021                    BY THE COURT

                                         *s/William I. Arbuckle*
                                         William I. Arbuckle
                                         U.S. Magistrate Judge